UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW CLARK,

    Petitioner,                                         Civil Case No. 15-12578
                                                                     Hon. Linda V. Parker

SHERMAN CAMPBELL,

    Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS; (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSON TO APPEAL IN FORMA PAUPERIS**

Petitioner Andrew Clark, ("Petitioner"), confined at Saginaw Correctional Facility in Freeland, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, Petitioner challenges his conviction for first-degree murder, Mich. Comp. Laws § 750.316; unlawful driving of an automobile, Mich. Comp. Laws § 750.413; arson of personal property, Mich. Comp. Laws § 750.74(1)(b)(i); and larceny in a building, Mich. Comp. Laws § 750.360. For the reasons stated below, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**I.     Background**

Petitioner was convicted after a jury trial in the Macomb County Circuit Court and sentenced to life imprisonment for the murder conviction and lesser terms of years for his other convictions. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was convicted of murdering Robert Miller, who died from multiple stab wounds. Miller's body was discovered inside his condominium. An autopsy revealed that he had been stabbed 132 times and sustained other blunt force injuries. Miller's car was missing from his house after the offense, and was later discovered burning less than a mile from defendant's home.
>
> Defendant's DNA profile matched DNA taken from items located at the crime scene. Telephone records showed that defendant and Miller were in telephone contact in the weeks leading up to the offense and that defendant was the last person who called Miller on the night of the offense. A cell phone "ping search" placed defendant and Miller together on the night of the murder. A handwritten note was found at the crime scene which stated, "He said tell the family he loved them. Sincerely, 'The Killer.'" A forensic document examiner testified that the writing on the note was consistent with defendant's writing. A diamond studded earring was found at the crime scene, which matched another earring found during a search of defendant's residence. In a recorded jailhouse telephone conversation, defendant told his brother that he killed Miller during a "robbery" that he set up. The police found receipts at defendant's home indicating that he had pawned Miller's wedding rings, and pawnshop business records also identified defendant as the person who pawned the rings. Surveillance video showed defendant's friend buying a gas can and

gasoline a short distance from where the car was found. Miller's computer equipment was found in the trunk of the burned car. After defendant was arrested, he gave a police interview in which he claimed that he killed Miller in self-defense after Miller made unwanted sexual advances toward him.

*People v. Clark*, No. 310253, 2013 WL 6670834, at *1 (Mich. Ct. App. Dec. 17, 2013).

After his sentencing, Petitioner was appointed appellate counsel who filed a claim of appeal in the Michigan Court of Appeals. Appellate counsel filed a brief on appeal raising two claims: (1) Petitioner is entitled to a new trial where the trial court erred in failing to suppress his statement, and (2) Petitioner is entitled to a new trial where the closing arguments of the prosecutor were improper. *Id.* at *1-2. The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Id.* Petitioner did not appeal this decision to the Michigan Supreme Court.

Petitioner subsequently filed a motion for relief from judgment in the trial court, raising the same five claims that he raises in the present action. (ECF No. 12-16.) The trial court denied the motion for relief from judgment in an opinion dated June 24, 2014, on the grounds that the claims were either barred from review for Petitioner's failure to raise them on direct appeal or because they were without merit. (ECF No. 12-17.)

3

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal "for failure to establish entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Clark*, No. 322762 (Mich. Ct. App. Oct. 3, 2014). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but that court also denied relief under Rule 6.508(D). *People v. Clark*, 864 N.W.2d 558 (Mich. 2015) (table).

Petitioner seeks a writ of habeas corpus on the following grounds:

> I. Whether defense counsel's performance or lack thereof constitutes ineffective assistance of defense counsel?
>
> II. Whether prosecutorial misconduct occurred during the course of trial?
>
> III. Whether appellate counsel's performance or lack thereof constitutes ineffective assistance of appellate counsel?
>
> IV. Whether defendant is entitled to relief pursuant to MCR 6.508(D)?
>
> V. Whether defendant demonstrates cause and prejudice for failure to raise issues on direct appeal?

(ECF No. 1 at Pg ID 9.)

## II. Standard of Review

28 U.S.C. § 2254(d) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas corpus action if the claims were rejected on

4

the merits by the state courts. 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

An "unreasonable application" occurs when a state court decision "unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant

5

state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

Demonstrating that a state court unreasonably applied clearly established Supreme Court law is no easy task because "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

## III. Analysis

### A. Procedural Default

The Court reads Petitioner's application for habeas relief to be raising two substantive grounds for relief: (1) that his trial counsel was ineffective for failing to

adequately challenge the prosecutor's case against him, and (2) that the prosecutor committed misconduct during closing argument. Petitioner's other three claims aim to explain why these two claims are ripe for review and not subject to any procedural defenses.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is both independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Courts have found it more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case, the Court deems it more efficient to proceed directly to the merits, particularly because

Petitioner alleges that his appellate counsel was ineffective for failing to preserve the defaulted claims.

### B. Ineffective Assistance of Trial Counsel

Petitioner first asserts that he was denied effective assistance of counsel at trial. Specifically, Petitioner argues that defense counsel failed to adequately support the defense theory that the victim's belongings were stolen after he was murdered, thus rebutting the prosecutor's theory that Petitioner was guilty of first-degree felony murder for committing a murder during the perpetration of a robbery. (ECF No. 1 at Pg ID 18.) Petitioner also argues that defense counsel should have called Petitioner's brother as a defense witness to give his interpretation of the telephone conversation in which Petitioner told his brother that he was targeting older men to set them up for a robbery. (*Id.*)

A defendant asserting ineffective assistance of counsel must satisfy two prongs. First, the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The Court "must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Second, the defendant must demonstrate prejudice, meaning "that there is a

8

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,'" meaning that when applied together, our "review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 689; *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

Petitioner's claim ignores the fact that he was found guilty of both first-degree felony murder *and* first-degree premeditated murder. (ECF No. 12-13 at Pg ID 935.) Pursuant to state law, those two convictions were merged into a single conviction of first-degree murder supported by both theories. (ECF No. 12-14 at Pg ID 940-41); *see also People v. Williams*, 715 N.W.2d 24, 24-25 (Mich. 2006) (finding that defendant receives one conviction of first-degree murder based on two theories when a defendant has committed a felony and charged with first-degree premeditated murder). Petitioner's claim only attacks his counsel's performance with respect to the first-degree felony murder theory. Even if Petitioner's counsel had somehow convinced the jury that Petitioner was not guilty of murder in the perpetration of a felony, the fact remains that the jury also found Petitioner committed first-degree premeditated murder. If Petitioner's attorney

9

performed deficiently by failing to present evidence that Petitioner stole the victim's items as an afterthought following the murder, and even if he had Petitioner's brother try to explain how statements that Petitioner "set the shit up myself, " "trying to rob him," and "that was the whole plan" indicated something other than a murder occurring during the perpetration of a robbery, it would not have affected the jury's determination that Petitioner was guilty of first-degree premeditated murder; rather, it would affect the first-degree felony murder conviction. (*See* ECF No. 12-18 at Pg ID 1208.)

Moreover, as outlined by the Michigan Court of Appeals, the evidence presented against Petitioner was overwhelming. The victim was stabbed over one-hundred times. *People v. Clark*, No. 310253, 2013 WL 6670834, at *1. Petitioner's DNA was found in the victim's residence, as was the brazen hand-written note admitting to being the killer. *Id.* A cell phone "ping search" indicated that Petitioner and the victim met on the date in question as the result of exchanges occurring on an internet dating site. *Id.* Jewelry belonging to Petitioner was found at the victim's residence, and items belonging to the victim were sold by Petitioner at a pawn shop. *Id.* Petitioner made incriminating statements both to the police and to family members on recorded telephone conversations. *Id.* This Court finds that given the weight of the evidence presented in support of both theories of first-

degree murder, there is no reasonable probability that but for the alleged omissions by counsel the outcome of the trial would have been more favorable to Petitioner.

### C. Prosecutorial Misconduct

Petitioner's second claim asserts that the prosecutor committed misconduct during trial. He argues that the prosecutor claimed during closing argument without evidentiary support that Petitioner targeted homosexual men for robbery, that Petitioner overpowered the victim as soon as they entered the apartment, that Petitioner had a gun, and that he tied the victim to a chair and tortured him. (ECF No. 1 at Pg ID 32.) Petitioner presented a similar prosecutorial misconduct claim during direct review which contained these as well as other factual predicates, but the Michigan Court of Appeals found the claim to be without merit. *People v. Clark*, No. 310253, 2013 WL 6670834, at *4. Respondent asserts that the state court adjudication did not unreasonably apply the established Supreme Court standard.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). See *Parker v. Matthews*, 132 S. Ct. 2148 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial

11

with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 132 S. Ct. at 2155 (quoting *Harrington*, 131 S. Ct. at 786-87). It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id*. In light of this standard, this Court finds that the state court reasonably concluded that the complained-of comments constituted reasonable inferences from the evidence presented at trial for the following reasons.

First, with respect to the prosecutor's comment that Petitioner was targeting homosexual men for robbery, evidence was presented at trial that Petitioner joined an internet dating service and created entries in the "men seeking men" section. 3/8/12 Tr. at 52-57, ECF No.12-10 at Pg ID 581-86; 3/9/12 Tr. at 49-52, ECF No. 12-11 at Pg ID 639-42. This was how Petitioner came into contact with the victim,

12

whom the evidence overwhelming indicated he robbed. Petitioner also set up two outgoing voice messages on the service soliciting men for dates. 3/8/12 Tr. at 53-57, ECF No. 12-10 at Pg ID 582-86; 3/13/12 Tr. at 11, ECF No. 12-12 at Pg ID 756. Accordingly, the prosecutor's argument constituted a fair inference from the evidence presented at trial.

Next, with respect to the statement that Petitioner immediately attacked the victim when they entered the victim's apartment, Detective Robert Eidt testified that when he saw the body of the victim he noted that he was wearing shoes. 3/9/12 Tr. at Pg ID 605, 609. The victim's daughter, meanwhile, testified that her father did not allow shoes to be worn in the house. 3/8/12 Tr. at 31-32, ECF No. 12-10 at Pg ID 560. The evidence therefore suggested that the victim had just entered his home with Petitioner when he was attacked, rather than the attack occurring after the two had been inside the home for a period of time, as claimed by Petitioner. While the inference drawn from the victim having shoes on was not particularly strong, it was at least a reasonable one based on the evidence presented.

Contrary to Petitioner's argument, the prosecutor never said that Petitioner was armed with a gun. Rather, the prosecutor stated that he "[did not] know if [Petitioner] had a gun." 3/14/12 Tr. at 27, ECF No. 12-13 at Pg ID 869. The

13

comment was made in the context of stating that the evidence did not allow for an entire picture of the crime to be drawn. There was nothing wrong with this observation.

Finally, with respect to comments that the victim was bound and tortured, a detective testified that while he was investigating the scene he found a kitchen chair out of place and "thrown in the middle of the room." 3/9/12 Tr. at 20-21, ECF No. 12-11 at Pg ID 610-11. The detective opined that the victim may have been forced to sit in that chair at some point and tortured there in light of the quantity of blood found in close proximity. *Id.* Accordingly, the prosecutor's statement during closing argument was reasonably based on the testimony of the detective.

Because the Michigan Court of Appeals reasonably rejected Petitioner's prosecutorial misconduct claim, Petitioner has failed to demonstrate entitlement to habeas relief. The petition will therefore be denied.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists

could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are devoid of merit. The Court will therefore deny a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**;

**IT IS FURTHER ORDERED** that a request to appeal *In Forma Pauperis* is **DENIED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: May 18, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 18, 2017, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager